UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>                                  )<br>   Plaintiff,            )<br>                                  )<br>v.                             )<br>                                  )<br>ROBERT CRICHLOW,      )<br>                                  )<br>   Defendant.           ) | Criminal Case No. 15-30023-MGM |

## MEMORANDUM AND ORDER

    I.    <u>Relevant background</u>

On January 23, 2018, defendant Robert Crichlow (Defendant) was convicted on one count of being a felon in possession of a firearm and one count of possession with intent to distribute cocaine base. He was sentenced to 84 months of incarceration followed by five years of supervised release. He was released to probation on October 22, 2021. On August 8, 2022, the Probation Department filed a Petition and Affidavit for Warrant or Summons for Offender Under Supervision, subsequently amended, alleging that Defendant had violated his conditions of supervised release as follows:[1]

- It is a condition of Defendant's supervised release that he not commit another federal, state, or local crime. It is alleged that on or around July 29, 2022, he committed a carjacking using a firearm; assault and battery with a dangerous weapon (the firearm); and larceny over $1,200, all in violation of the laws of the Commonwealth of Massachusetts.

- It is a condition of Defendant's supervised release that he not associate with any other person engaged in criminal activity and that he not associate with anyone previously convicted of a felony without prior permission from the Probation Department. It is

---

[1] The initial petition alleged that Defendant committed one or more crimes in Holyoke on or around August 6, 2022. State court charges related to those allegations have been dismissed and the government elected not to proceed on those charges as a basis for alleging that Defendant violated his conditions of supervised release.

alleged that on or around July 29, 2022, Defendant associated with Nagee Jones in the commission of one or more crimes. Mr. Jones was previously convicted of a felony and is currently serving a term of supervised release on a sentence imposed by this court.

Defendant had his initial appearance in this court on August 22, 2022, at which time the court appointed counsel. The government moved for detention pending a final revocation hearing. Following consultation with counsel, Defendant, who is being held by the Commonwealth following a dangerousness hearing, agreed to entry of an order of detention pending a preliminary hearing, without prejudice to his filing a motion seeking pre-hearing release if he deemed himself in a position to do so. Defendant asserted his right to a preliminary hearing in compliance with Fed. R. Crim P. 32.1(b)(1)(A), which hearing was held on April 24, 2023.

II.     Preliminary hearing standard

In reciting the applicable standard, the court acknowledges the helpful opinion in *United States v. Bowie*, No. 1:14-MJ-0189PAS, 2014 WL 4542974 (D.R.I. Sept. 12, 2014), authored by Magistrate Judge Patricia A. Sullivan.

> The government's burden to establish probable cause at the preliminary stage is low. … Although mere suspicion does not suffice, probable cause may be found where there is a "fair probability," based on the totality of the circumstances, that a defendant committed the [violation] charged." *United States v. Mims*, 812 F.2d 1068, 1072 (8th Cir. 1987) (quoting *Illinois v. Gates*, 462 U.S. 213, 231 (1983)); *see United States v. Gomez*, 716 F.3d 1, 7 (1st Cir. 2013). Both circumstantial evidence and the reasonable inferences drawn from it can support a finding of probable cause. *United States v. Swope*, 542 F.3d 609, 616 (8th Cir. 2008); *United States v. Hilario*, CR No. 1:09-M-167A, 2009 WL 2913957, at *1 (D.R.I. Sept. 9, 2009). With the exception of the rules on privilege, the Federal Rules of Evidence are not applicable at preliminary hearings. Fed. R. Evid. 1101(d)(3). As a result, the probable cause finding may be based, in whole or in part, on hearsay evidence ….
>
> The Supreme Court has counselled that probable cause is a "fluid concept," turning on the evaluation of evidence in a "nontechnical, common-sense" manner. *Gates*, 462 U.S. at 232, 235-36 (1983). "It does not require the fine resolution of conflicting evidence that a reasonable-doubt or even a preponderance standard

demands, and credibility determinations are seldom crucial in deciding whether the evidence supports a reasonable belief in guilt." *Gerstein v. Pugh*, 420 U.S. 103, 121 (1975). Based on this guidance, the magistrate judge's role at the preliminary hearing is simply to determine whether the government has presented sufficient evidence to establish probable cause. *United States v. Kin-Hong*, 110 F.3d 103, 120 (1st Cir. 1997); *Ross v. Sirica*, 380 F.2d 557, 560 (D.C. Cir. 1967). It is generally inappropriate for the magistrate judge to make credibility determinations, which fall within the province of the [judge] as the trier of fact. *United States v. Perez*, No. 5:14-MJ-75, 2014 WL 1725759, at *11 (S.D. Tex. Apr. 29, 2014 (at probable cause stage of proceedings, defense's credibility-focused efforts are essentially irrelevant).

*Id.* at *1.

Defendant's challenge to probable cause is based primarily on the contentions that the government should not be permitted to rely on hearsay evidence to show probable cause and that the statements from two witnesses who identified Defendant as a perpetrator of a July 29, 2022 armed carjacking, robbery, and assault and battery with a dangerous weapon are not reliable.

      III.      The preliminary hearing evidence

At the outset of the hearing, the government informed the court that it would not be calling either of the two complaining witnesses who identified Defendant as one of the perpetrators of the carjacking of which they were victims on July 29, 2022. The government indicated that testifying could implicate the complaining witnesses' Fifth Amendment rights and interfere with the on-going prosecution of the related criminal case in Hampden County Superior Court.

The government called Felix Perez (Perez), a Springfield Police Department (SPD) detective assigned to the robbery and homicide division, who testified that he was assigned to investigate a carjacking and robbery that allegedly occurred on or around July 29, 2022. Perez testified that the SPD received a 911 call on July 29, 2022 reporting a carjacking and robbery at 501 St. James Avenue in the parking lot of an autobody shop. Perez met with the two

complaining witnesses, Mr. Figueroa (Figueroa) and Ms. Diebold (Diebold), at the Racing Mart, a convenience store near the autobody shop, the day after the incident. Figueroa and Diebold told Perez that, sometime around noon on July 29, 2022, they met with two individuals whom they knew, although not by name, at the Racing Mart. Figueroa and Diebold arranged to meet these two individuals later the same day to sell them marijuana. One of these individuals was wearing a baseball cap on backwards and the other, who was wearing a Boone cap, had a missing tooth. According to Figueroa and Diebold, one of the men was 6'2"; the other was 6'5". Figueroa and Diebold told Perez that, when they got to the rendezvous in the autobody parking lot that evening, one of the individuals with whom they were meeting pulled out a gun. The man in possession of the gun used it to hit Figueroa in the back, the individuals took the marijuana and some personal items from Figueroa and Diebold, then drove off in Diebold's car. The man holding the gun was the one shown in the Racing Mart videotape wearing a baseball cap on backwards.

    As the next step in his investigation, Perez reviewed surveillance videotape from the Racing Mart. Consistent with the statements from Figueroa and Diebold, the videotape showed a meeting between Figueroa and Diebold and two individuals, one of whom was wearing a baseball cap on backwards, and one of whom was wearing a Boone cap and was missing a tooth. Perez gave a copy of the videotape to an SPD department that created an internal BOLO (be on the look-out) for identification alerting SPD officers that Perez was looking to identify the individuals from the Racing Mart surveillance video. The BOLO, which was a single piece of paper featuring still shots from the Racing Mart video, clearly showed the faces of the two men with whom Figueroa and Diebold met around noon at the Racing Mart.

After the BOLO was broadcast on a local television station, Perez immediately heard from a Holyoke police officer, several correctional officers, and federal probation officer Christopher Roldan, all of whom identified the man in the backward baseball cap as Defendant and the man in the Boone cap as Jones. Perez also showed the stills from the Racing Mart video to Figueroa, who told Perez that the men in the stills from the video were the men he and Diebold met at the Racing Mart who later carjacked them in the autobody shop parking lot. Figueroa identified Defendant (the one in backward baseball cap) as the man with the gun.

Using the identities with which he had been provided, Perez pulled SPD mug shots of Defendant and Jones and had an officer put together separate photo arrays for Defendant and Jones. Perez took the photo arrays to Diebold's apartment, separated Diebold and Figueroa, and showed each of them the photo arrays. Each selected Defendant and Jones as their assailants. Figueroa again identified Defendant as the man who wielded the gun during the robbery and carjacking (Exh. 1). Diebold also identified Defendant as the man with the gun. Perez admitted that the height estimates of 6'2" and 6'5" provided by Figueroa and Diebold were wildly inaccurate. Defendant is 5'8" and Jones is not close to 6'5".

Perez also attempted to retrieve video surveillance evidence from the autobody shop. He was told that the system had malfunctioned. The employee with whom Perez spoke could only bring up one or two stills. Both stills showed Diebold and her vehicle with a tall individual to Diebold's left. Following these investigative steps, Perez applied for arrest warrants for Defendant and Jones.

On cross-examination, Perez testified that he did not read the reports of the police officer who responded to the 911 call about the carjacking. Figueroa and Diebold were untruthful in their reports to the responding officers. Among other things, they did not disclose that they were

in the autobody shop parking lot to sell marijuana. Perez sent SPD video technicians to retrieve videotape from the Racing Mart. Although he testified that video from the autobody shop parking lot would have been very valuable evidence in the case, he never sent a video technician to the autobody shop to verify that the video surveillance equipment had malfunctioned. Perez never asked Figueroa and Diebold whether they had smoked marijuana on July 29, 2022 or consumed any other substance that might have interfered with their ability to perceive events accurately. Although Figueroa told Perez that he called the men to whom he planned to sell marijuana, Perez did not ask to see Figueroa's cellphone. Videotape from the Racing Mart showed that Figueroa returned to the Racing Mart after his meeting with Defendant and Jones to buy marijuana from an unidentified individual. Perez did not identify this man. Additional footage from the Racing Mart recorded Figueroa and Diebold after the carjacking. There was an individual in a white tee-shirt who went into the Racing Mart around the same time. Figueroa and Diebold said they did not know the man and, again, Perez did not attempt to identify him.

On or around August 17, 2022, Figueroa and Diebold reported to Perez that they had been chased by the individuals who had carjacked them. Defendant and Jones could not have chased Figueroa and Diebold on August 17, 2022, because both were in custody when the chase reportedly occurred. Neither Perez nor any other SPD officer checked to see if there was surveillance video of an August 17, 2022 car chase down State Street, which is a major thoroughfare in Springfield. Perez did not include this allegation in his report about the case.

Defendant offered a recording of Diebold's July 29, 2022 call to 911 into evidence. While most of the call is difficult to decipher, in large part because Diebold was fearful and hysterical, one statement that clearly emerges is that she told the 911 operator that she had no idea of the identities of the individuals who stole her car (Exh. 2).

Relying on testimony from Perez, a Hampden County Grand Jury found probable cause to indict Defendant on charges of carjacking using a firearm; assault and battery with a dangerous weapon (the firearm); and larceny over $1,200 on or around July 29, 2022.

IV.     Assessment of probable cause as to alleged violations

The court turns first to Defendant's challenge to the government's reliance on hearsay – Perez's account of statements by Figueroa and Diebold – at the preliminary hearing. Hearsay evidence may be considered at a preliminary hearing, *see United States v. Rodriguez*, 919 F.3d 629, 635 (1st Cir. 2019) (citing, *inter alia*, Fed. R. Crim P. 32.1(b)(1)(B)(iii), which applies to preliminary hearings), because a "defendant has only a limited right of confrontation" and does not enjoy the full panoply of due process rights that apply when a defendant is initially indicted. *Id.* Rule 32.1(b)(1)(B)(iii), which governs requirements for preliminary hearings, provides that "upon request," a magistrate judge must give the person charged with a supervised release violation "an opportunity to question any adverse witness, unless the judge determines that the interest of justice does not require the witness to appear." Before relying on hearsay evidence in a preliminary hearing when a defendant has requested the opportunity to question an adverse witness, a court "must balance the right to confront witnesses against whatever good cause may exist for relaxing customary principles of confrontation." *Rodriguez*, 919 F.3d at 635 (citing *Rondeau*, 430 F.3d at 48; Fed. R. Crim. P. 32.1(b)(1)(B)(iii), 2(C)). In conducting this analysis, "the court must 'weigh both the apparent reliability of the hearsay evidence and the government's proffered reason for not producing the declarant.'" *Id.* (quoting *United States v. Fontanez*, 845 F.3d 439, 443 (1st Cir. 2017)).

In relying on Figueroa and Diebold's Fifth Amendment rights as a reason for not calling them, the government showed good cause for relaxing the customary principle of confrontation.[2] "[A] witness may invoke the Fifth Amendment if testifying might incriminate him …." *United States v. Ramos*, 763 F.3d 45, 53 (1st Cir. 2014). "The burden on the witness is 'not a particularly onerous one.'" *United States v. Forty-Febres*, 982 F.3d 802, 807 (1st Cir. 2020) (quoting *United States v. Castro*, 129 F.3d 226, 229 (1st Cir. 1997)). There is no doubt that had Figueroa and Diebold been called as witnesses at the preliminary hearing, they would have been asked to testify under oath about their plan to sell marijuana to Defendant and Jones. Any such transaction would have been in violation of state and federal law, and testimony on this subject, if it was consistent with the statements Figueroa and Diebold gave to Perez, would have tended to incriminate them. Concerns about their reliability as witnesses were offset by the corroboration from the Racing Mart videotapes about a number of the events at issue and the multiple identifications of Defendant and Jones from reliable sources. The court finds that the government properly relied on Perez to present its case for probable cause at the preliminary hearing.

Defendant challenges probable cause on two related grounds. He argues, first, that Perez conducted a cursory investigation in which he failed to follow up obvious investigative avenues that might have yielded additional relevant evidence, and, second, that the eyewitness identifications made by Figueroa and Diebold are so unreliable, judged by legal standards applied to eyewitness identifications, that they cannot give rise to probable cause to believe Defendant committed the July 29, 2022 carjacking and robbery. The arguments Defendant

---

[2] Because the court deems the Fifth Amendment issue to be a sufficient justification for the government's reliance on hearsay, the court does not reach the government's additional contention about possible interference with an on-going state court prosecution.

advances may prevail in a different proceeding, when a higher standard of proof applies, but they are not sufficient at this stage. The court finds that the government has shown probable cause to believe that Defendant committed a carjacking using a firearm, hit Figueroa with the firearm, and stole items from Diebold and Figueroa on July 29, 2022.

Perez reasonably assumed that Figueroa and Diebold were not forthcoming about the identity of their assailants in the 911 call and their initial contact with police officers because they had arranged to meet Defendant and Jones for an illegal purpose. This assumption is plausible. The account of events they gave to Perez the next day was confirmed by objective evidence in the Racing Mart videotapes, which showed Figueroa and Diebold meeting with Defendant and Jones around noon, and videotape from the evening that tended to confirm that Diebold's car was stolen and that the incident was traumatic. With respect to the identifications from Figueroa and Diebold, "[r]eliability is the linchpin in determining the admissibility of identification testimony …." *Manson v. Brathwaite*, 432 U.S. 98, 114 (1977). While Defendant has pointed to significant discrepancies in Figueroa and Diebold's identifications of Defendant and Jones, the most significant of which are whether their assailants were tall men and the claimed car chase on August 17, 2022, there is, on the other side of the scale, substantial corroboration for the identifications. Independent and particularly reliable sources – a Holyoke police officer, several correctional officers, and a federal probation officer well known to and trusted by this court – identified Defendant and Jones as the individuals who met with Figueroa and Diebold at the Racing Mart. Figueroa's confirmation to Perez that the men in the Racing Mart video were the men who stole Diebold's car at gunpoint was "essential to an ongoing police investigation." *United States v. Harty*, 476 F. Supp. 2d. 17, 23 (D. Mass. 2007) (citing *Simmons v. United States*, 390 U.S. 377, 384-85 (1968)). Even if Figueroa's photo array identifications of

9

Defendant and Jones were influenced by his review of the stills from the Racing Mart videotape, there was no evidence that Diebold's identifications were similarly influenced, yet she identified that same individuals as did Figueroa. In essence, Defendant's challenge to the eyewitness identifications by Figueroa and Diebold presents a challenge to their credibility, but "the probable cause determination at the preliminary hearing is not to be based on the weighing of credibility ...." *Bowie*, 2014 WL 4542974, at *4.

It does not appear that Defendant disputes the truth of the claim by the complaining witnesses that someone stole Diebold's car on July 29, 2022 during an encounter in the autobody shop parking lot. That the encounter was violent is supported by Diebold's hysterical 911 call. *Cf. United States v. Brito*, 427 F.3d 53, 61 (1st Cir. 2005) ("Rule 803(2) allows the admission of excited utterances [as an exception to the hearsay rule] based on the theory that a person speaking about a startling event, while still under the stress of experiencing or observing that event, normally does not have either the capacity or the incentive to prevaricate."). Viewing the evidence in a non-technical, common-sense manner, the court finds that the government has shown probable cause to believe that Figueroa and Diebold were the victims of a carjacking and robbery on July 29, 2022, and that Figueroa was the victim of an assault and battery with a dangerous weapon. Thus, Defendant's contentions about shortcomings in Perez's investigation, including his reliance on identifications by Figueroa and Diebold, boils down to a claim that someone else might have done it. The court concludes that the evidence, including statements from Figueroa and Diebold offered through Perez, the Racing Mart videotapes, and identification evidence from reliable sources, is sufficient at the probable cause stage to support the government's contention that there is a fair probability that Defendant was the man with the gun responsible for carjacking, robbery, and assault and battery with a dangerous weapon, in the

autobody shop parking lot on July 29, 2022, and that his associate in that criminal enterprise was Najee Jones.

V.     Conclusion

Based on the foregoing, this court concludes that the evidence presented by the government satisfies its burden of establishing probable cause to believe that Defendant violated the conditions of his supervised release as set forth in the petition.  The Clerk's Office is directed to set a date that is mutually convenient for the parties and the court for a status conference.

It is so ordered.

Dated: May 22, 2023                                         /s/ Katherine A. Robertson
                                                            KATHERINE A. ROBERTSON
                                                            U.S. Magistrate Judge